UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SIMON KARIMIAN, | ) | CV 12-08359-SVW(CWx) |
| | ) | |
| Plaintiff, | ) | ORDER DENYING PLAINTIFF'S |
| | ) | MOTION FOR ENTRY OF DEFAULT |
| v. | ) | JUDGMENT AGAINST DEFENDANT |
| | ) | COLLECTION CONNECTION [53] |
| CMRE FINANCIAL SERVICES INC., et al | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**I. INTRODUCTION**

On September 27, 2012, Plaintiff Simon Karimian ("Plaintiff") filed a Complaint against Defendant Collection Connection ("Defendant") for violating the (1) Federal Fair Credit Reporting Act ("FCRA"); (2) Federal Fair Debt Collection Practices Act ("FDCPA"); (3) California Consumer Credit Reporting Agencies Act ("CRAA"); (4) Rosenthal Fair Debt Collection Practices Act ("RFDCPA"); and (5) defamation by libel. Specifically, Plaintiff alleges that Defendant breached its duty to employ reasonable procedures to ensure the accuracy of credit information under both the FCRA, 15 U.S.C. § 1681s-2(b) and the CRAA, Cal Civ. Code § 1785.25(a), by attributing an inaccurate account to Plaintiff and by failing to comply with its re-investigative duties. Plaintiff further alleges that Defendant committed violations under the FDCPA, 15 U.S.C. §§ 1692(e)-(g) and the RFDCPA, Cal. Civ. Code

§ 1788.17 because Defendant failed to comply with statutory notice, disclosure, and validation requirements, reported debt information Defendant knew or should have known to be false, and failed to stop collection efforts upon notice of Plaintiff's dispute.  As a result, Defendant allegedly damaged Plaintiff's creditworthiness and reputation as a consumer and borrower.

On April 23, 2013, Plaintiff filed a Request for Entry of Default against Defendant, and the Clerk entered Defendant's default on April 24, 2013.  On June 4, 2013, Plaintiff filed a Motion for Default Judgment ("Motion").  (Dkt. 53).  For the reasons set forth below, the Motion is DENIED without prejudice.

## II.   FACTS & PROCEDURAL HISTORY

On or about August 2012, Plaintiff obtained his credit reports maintained by three major credit reporting agencies: Experian, Equifax, and TransUnion (collectively "CRAs").  (Compl. ¶ 11).  Plaintiff examined his credit reports and discovered an account reported by Defendant in derogatory status (Account No. TCCPIDS7005031456).  (Id.). Upon further review, Plaintiff determined that the account did not belong to him and, consequently, on August 3, 2012, submitted written credit disputes to the CRAs.  (Compl. ¶¶ 12, 13).

Based on information and belief, the CRAs contacted Defendant regarding Plaintiff's disputed account.  (Compl. ¶ 14).  On August 20, 2012, Plaintiff mailed a dispute letter to Defendant requesting documentation to substantiate the account, validation of the purported debts, and verification of their collection accounts as reported to the CRAs.  (Id. ¶ 16).  Defendant did not respond.

Several days following Plaintiff's credit bureau dispute, updated credit reports showed that Defendant allegedly verified the accounts to

the CRAs. (Compl. ¶ 19). On September 20, 2012, and again on September 25, 2012, Plaintiff sent a letter to Defendant requesting substantiation to support their verification of the account, but Defendant did not respond to Plaintiff or otherwise delete the account. (Id. ¶¶ 20-21).

Based on these allegations, Plaintiff raises seven causes of action: (1) willful violation of the FCRA, 15 U.S.C. § 1681s-2(b); (2) negligent violation of the FCRA, 15 U.S.C. § 1681s-2(b); (3) intentional violation of the CCRAA, Cal. Civ. Code § 1785.25(a); (4) negligent violation of the CCRAA, Cal. Civ. Code § 1785.25(a); (5) violation of the FDCPA, 15 U.S.C. §§ 1692(e)-(g); (6) violation of the RFDCPA, Cal. Civ. Code § 1788.17; and (7) defamation by libel. The Complaint requests the following relief: (1) actual damages; (2) statutory damages; (3) civil penalties; (4) legal fees and costs; (5) prejudgment and postjudgment interest; (6) punitive damages; (7) declaratory relief; (8) injunctive relief; and (9) additional relief as the Court deems proper. (Compl. at 10).

**III. LEGAL STANDARD**

Before a court may rule on a Motion for Default Judgment, it first must determine whether it complies with Rule 55 of the Federal Rules of Civil Procedure and with Local Rule 55-1. See PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002). The Motion for Default Judgment must set forth: (1) when and against which party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is adequately represented; (4) that the Soldiers' and Sailors' Civil Relief Act of

1940 does not apply; and (5) that notice of the application has been served on the defaulting party, if required. Id.

Once these procedural requirements are met, "[g]ranting or denying a motion for default judgment is a matter within the court's discretion." Landstar Ranger, Inc. v. Parth Enters., 725 F. Supp. 2d 916, 919 (C.D. Cal. 2010). Default judgments are ordinarily disfavored. Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1986). Accordingly, the Ninth Circuit has instructed courts to consider the following factors in deciding whether to grant default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Id. at 1471-72.

Upon entry of default, the well-pleaded allegations of the complaint, except those concerning damages, are deemed true. Fed. R. Civ. P. 8(b)(6); see also TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (citation omitted). The court, however, must assure itself that "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." Landstar, 725 F. Supp. 2d at 920. Further, the plaintiff must provide evidence of damages, and the damages sought must not be different in kind from or exceed the amount demanded in the pleadings. Fed. R. Civ. P. 54(c).

**IV. DISCUSSION**

    **A.    Procedural Requirements**

Plaintiff has satisfied in substance the procedural requirements for default judgment under Local Rule 55-1. Plaintiff's Motion posits that (1) Defendant was served with the Summons and the Complaint, and on April 24, 2013, the Clerk entered default against Defendant (Doc. No. 26, 32); (2) Defendant failed to respond to the Complaint; (3) Defendant is not an infant or an incompetent person, but a California corporation; (4) Defendant is not in military service or otherwise subject to the Soldiers' and Sailors' Civil Relief Act; and (5) Defendant has not appeared in this action to date. (Mot. at 7)[1]. As the procedural requirements are met, the Court turns to examine the merits of the request.

    **B.    Application of <u>Eitel</u> Factors**

        **1. Possibility of Prejudice to the Plaintiff**

A denial of default judgment that leaves a plaintiff without other recourse for recovery is prejudicial. <u>PepsiCo</u>, 238 F. Supp. 2d at 1177. Denying default judgment would leave Plaintiff without other means to recover his loss. Moreover, prejudice arises from unnecessary delay in receiving the relief requested and from the resulting need to devote additional time and money to further litigation. Plaintiff will also be unable to obtain injunctive relief as Defendant will continue to report inaccurate credit information and damage Plaintiff's creditworthiness. Consequently, without a default judgment, Plaintiff

---

[1] Although Plaintiff must normally outline the procedural requirements for default judgment in a Declaration, nevertheless, because the instant Motion for Default Judgment is denied, proper citation to a Declaration is dispositive.

will suffer prejudice. Therefore, the first <u>Eitel</u> factor weighs in favor of granting default judgment.

### 2. Substantive Merits and Sufficiency of Complaint

The second and third <u>Eitel</u> factors are often analyzed together. The Ninth Circuit has "suggested that these two factors require that a plaintiff 'state a claim on which [it] may recover.'" <u>PepsiCo</u>, 238 F. Supp. 2d at 1175 (quoting <u>Kloepping v. Fireman's Fund</u>, No. C 94-2684 THE, 1996 U.S. Dist. LEXIS 1789, at *2 (N.D. Cal. Feb. 13, 1996)).

Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages. <u>TeleVideo Sys., Inc.</u>, 826 F.2d at 917-18. Additionally, courts recognize that these factors favor the plaintiff where the defendant, like Defendant here, has never disputed the merits of the claim. See <u>PepsiCo</u>, 238 F. Supp. 2d at 1177. For the reasons stated below, Plaintiff has failed to "state a claim on which [Plaintiff] may recover." <u>Id.</u> at 1175.

#### a. Violations of FCRA

Plaintiff alleges that Defendant violated 15 U.S.C. § 1681s-2(b) in three respects: (1) by negligently breaching their duty to report accurate credit information; (2) by failing to conduct a proper investigation of disputed information and by failing to verify, correct, or delete Plaintiff's disputed information within the thirty day time frame in violation of § 1681s-2(b)(1)-(2); and (3) by willfully disregarding their "re-investigative duties" in the event of consumer disputes in violation of § 1681s-2(b). (Compl. ¶¶ 25-36).

#### i. Legal Standard

"[T]o ensure that credit reports are accurate, the FCRA imposes some duties on the sources that provide credit information to [credit

reporting agencies], called 'furnishers' in the statute." <u>Gorman v. Wolpoff & Abramson, LLP</u>, 584 F.3d 1147, 1153 (9th Cir. 2009). Section 1681s-2 sets forth two categories of responsibilities that furnishers must adhere to. Subsection (a) establishes the duty "to provide accurate information," which includes a duty not to report information that a furnisher knows or "has reasonable cause to believe" is inaccurate, a duty to correct and update information provided to consumer reporting agencies, and a duty to notify such agencies when a consumer disputes any reported information. <u>See</u> 15 U.S.C. § 1681s-2(a).

Section 1681s-2(b) imposes obligations that are "triggered 'upon notice of dispute'— that is, when a person who furnished information to a CRA receives notice from the CRA that the consumer disputes the information." <u>Gorman</u>, 584 F.3d at 1154. Specifically, after receiving a notice of dispute, the furnisher has four obligations: (1) to conduct an "investigation with respect to the disputed information;" (2) to review all relevant information provided by the CRA; (3) to report the results of its investigation to the CRA; (4) and if the investigation finds the information is incomplete or inaccurate to report those results "to all [nationwide] consumer reporting agencies to which the person furnished the information." 15 U.S.C. § 1681s-2(b)(1). However, notice of a dispute received directly from the consumer does not trigger a furnisher's duties under subsection (b). <u>See</u> <u>Gorman</u>, 584 F.3d at 1154. Further, the Ninth Circuit has clarified that this investigation by the furnisher must be "reasonable" and "non-cursory." <u>Id.</u> at 1157.

Although "the FCRA expressly creates a private right of action for willful or negligent noncompliance with its requirements . . . § 1681s-2 limits this private right of action to claims arising under subsection (b), the duties triggered upon notice of a dispute from a CRA." Gorman, 584 F.3d at 1154; see also § 1681s-2(c) ("Except [for circumstances not relevant here], sections 1681n and 1681o of this title do not apply to any violation of . . . subsection (a) of this section, including any regulations issued thereunder."). Thus, "[d]uties imposed on furnishers under subsection (a) are enforceable only by federal or state agencies." Gorman, 584 F.3d at 1154.

### ii. Application

First, Plaintiff's claim that Defendant negligently reported inaccurate information about Plaintiff to the CRAs is not cognizable because the duty to furnish accurate credit information is set forth in 15 U.S.C. § 1681s-2(a)(1)(A), not in § 1681s-2(b). There is no private right of action for a claim brought under subsection (a). Gorman, 584 F.3d at 1154. Accordingly, this claim fails.

Second, Plaintiff's claim that Defendant failed to conduct a proper investigation of Plaintiff's disputed information cannot be sustained because the Complaint itself alleges that Defendant investigated and verified the debt to the CRAs. By Plaintiff's own admission, several days after the CRAs contacted Defendant regarding Plaintiff's disputed account, updated credit reports showed that Defendant had verified the account to the CRAs. (Compl. ¶¶ 14, 19). In other words, Defendant investigated, reviewed, and verified the disputed information and reported its results – i.e., verification – to the CRA. The Complaint contains no factual allegations suggesting that

Defendant's investigation was deficient or unreasonable.[2] Because the Complaint itself suggests that Defendant's investigation did not reveal inaccurate information, the duty to correct or delete the disputed information did not arise.

Rather, Plaintiff's Complaint focuses on the allegation that Defendant had a duty to respond to *Plaintiff's* repeated letters. (Compl. ¶ 22). Section 1681s-2(b), however, requires no such action from Defendant. Accordingly, the allegations in the Complaint are insufficient to warrant default judgment on the FCRA claims brought under 15 U.S.C. § 1681s-2(b).

### b.  Violations of FDCPA

Plaintiff next alleges that Defendant failed to serve him with a written notice of the subject debt collection in violation of 15 U.S.C. § 1692g(a), and failed to cease collection activities in the absence of validation of the debt in violation of § 1692g(b). Plaintiff further alleges that because Defendant reported the subject debt to CRAs without notice to Plaintiff and without verifying the debt, Defendant used "false, deceptive, and misleading representations" to collect the debt in violation of § 1692e(2), and used "unfair or unconscionable means" to collect the debt in violation of § 1692f. (Compl. ¶¶ 45-52).

### i.  Section 1692g(a)

Section 1692g(a) provides that within five days after the "initial communication" with a consumer concerning the collection of debt, a debt collector "must send consumers written notice containing certain

---

[2] Plaintiff's conclusory assertion that the disputed account does not belong to him, does not constitute well-pleaded facts to support a plausible inference that Defendant failed to conduct a reasonable investigation.

9

information regarding the alleged debt and advising them inter alia that it will be assumed to be valid unless the consumer contests its accuracy or validity within thirty days." Swanson v. S. Or. Credit Serv., Inc., 869 F.2d 1222, 1224 (9th Cir. 1988). Section 1692g(a) requires only that the notice is sent to the consumer, but does not require the debt collector to establish the actual receipt by the consumer. Mahon v. Credit Bureau of Placer County Inc., 171 F.3d 1197, 1201 (9th Cir. 1999).

Here, Plaintiff's Complaint did not assert that Defendant engaged in any "initial communication" with Plaintiff that would trigger its duties under § 1692g(a).  Courts agree that a debt collector need not provide any written notice to a consumer if the debt collector never in fact had any initial communication with the consumer. See Grigoryan v. Convergent Outsourcing, Inc., No. CV 12-1499-CAS, 2012 WL 4475455, at *2 (C.D. Cal. Sept. 24, 2012) ("Because a defendant cannot violate the plain terms of any of the above-cited code sections [§§ 1692e(11), 1692g(a), 1692e(1), and 1692f,] without making some sort of communication with a consumer, plaintiff's claim fails as a matter of law."); Nikogosian v. Cavalry Portfolio Servs., LLC, No. CV 12-00464-RGK (AJWx), 2012 WL 2568124, at *2 (C.D. Cal. July 2, 2012) ("Some contact with Plaintiff by Defendant in the act of collecting a debt is necessary to trigger a claim under any of the four provisions of the FDCPA [, §§ 1692e(11), 1692g(a), 1692e(1), and 1692f,] that Plaintiff cites in her Complaint.  Without any supporting factual allegations, Plaintiff's claim under the FDCPA fails.").  Therefore, because Defendant did not engage in an initial communication, Defendant's duty to serve notice did not arise under § 1692g(a).

Plaintiff's potential argument that Defendant engaged in an "initial communication" by reporting the debt *to the CRAs* is also unavailing. This reading of "initial communication" is foreclosed by the plain statutory text, which states that the duty to serve notice is triggered upon "initial communication *with a consumer* in connection with the collection of any debt." 15 U.S.C. § 1692g(a) (emphasis added). Here, the CRAs are not consumers because they are not "obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a. Thus, Defendant's contact with CRAs does not constitute a communication with a consumer. See also Berberyan v. Asset Acceptance, LLC, No. CV 12-4417-CAS, 2013 WL 1136525, at *4 (C.D. Cal. Mar. 18, 2013) (rejecting same argument that furnisher's alleged reporting of a debt to CRAs constituted a "communication"). In sum, Plaintiff has failed to "state a claim on which [Plaintiff] may recover" under § 1692g(a). PepsiCo, 238 F. Supp. 2d at 1175.

### ii. Section 1692g(b)

Plaintiff alleges that Defendant violated section 1692g(b) by failing to validate the debt, which he disputed in his letters, and by continuing to report the debt to CRAs. Under section 1692g(b), if a consumer disputes in writing the validity of the debt within 30 days of **receiving the notice required by § 1692g(a)**, the debt collector shall cease collection of the debt until the debt collector provides verification of the debt to the consumer. 15 U.S.C. § 1692g(b) (emphasis added); see also Mahon, 171 F.3d at 1202 ("Under this section, a debt collector must provide verification of the debt to the debtor, upon written request made by the debtor within 30 days after receipt of the initial Notice."). In other words, § 1692g(b) governs a

debt collector's duties after an initial communication between the debt collector and consumer has taken place under § 1692g(a).

However, as already discussed above, the Complaint fails to allege any "initial communication" from Defendant to Plaintiff. The result, as explained below, is that section 1692g(b) never comes into effect:

> Subsection 1692g(b), which establishes the temporary moratorium on collection efforts, comes into effect only [i]f the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt . . . is disputed . . . . In turn, that thirty day period commences only after (1) an "initial communication" from a debt collector, followed by (2) a written notice to the debtor of his right to challenge the debt. As noted above, if no initial communication takes place, then the thirty day period never begins running.

Lane v. Fein, Such and Crane, LLP, 767 F. Supp. 2d 382, 387 (E.D.N.Y. 2011). Thus, absent any initial communication, Defendant's duties under § 1692g(b) never ripened. Accordingly, Defendant's failure to validate Plaintiff's disputes and continued reporting of the debt are not actionable under § 1692g(b). Therefore, Plaintiff has failed to "state a claim on which [Plaintiff] may recover" under § 1692g(b). PepsiCo, 238 F. Supp. 2d at 1175.

### iii. Sections 1692e and 1692f

Section 1692e prohibits a debt collector from using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e. This prohibition encompasses false representations concerning the "character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). It also includes "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that

a disputed debt is disputed." 15 U.S.C. § 1692e(8). Section 1692f provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

Here, Plaintiff has not alleged facts to suggest that Defendant's act of reporting the subject debt to the CRAs was false, deceptive, unfair, or unconscionable. In fact, the Complaint establishes that once Defendant received Plaintiff's August 2012 letter disputing the debt, Defendant immediately verified Plaintiff's accounts to the CRAs. (Compl. ¶ 19). The Court therefore concludes Plaintiff has failed to "state a claim on which [Plaintiff] may recover" as to the FDCPA claims under sections 1692e and 1692f. PepsiCo, 238 F. Supp. 2d at 1175.

In sum, Plaintiff's federal claims clearly fail. The Court may dismiss on its own motion a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). See Omar v. Sea-Land Serv., Inc., 813 F.2d 986, 991 (9th Cir. 1987) ("A trial court may dismiss a claim sua sponte under [Rule] 12(b)(6). Such a dismissal may be made without notice where the claimant cannot possibly win relief.") (internal citations omitted). Accordingly, Plaintiff's federal claims are DISMISSED. Because no federal claim remains, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3).

**V. CONCLUSION**

For the reasons set forth above, Plaintiff's Motion for Entry of Default Judgment against Defendant Collection Connection is DENIED. The claims against Defendant are DISMISSED, without prejudice to the filing of an amended complaint. Plaintiff may file an amended complaint against Defendant within twenty-one (21) days of the date of

13

this Order. Failure to file an amended complaint by this deadline will result in dismissal with prejudice as to Collection Connection.

Apart from Collection Connection, the only remaining defendant is Fidelity Creditors Services, with whom Plaintiff has negotiated a settlement. If Plaintiff does not file the appropriate voluntary dismissal within fourteen (14) days of the date of this Order, the Court will reset the matter for trial.

IT IS SO ORDERED.

DATED: July 31, 2013

STEPHEN V. WILSON
UNITED STATES DISTRICT JUDGE